IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, a Nebraska Not-For-Profit Fraternal Benefit Society, | ) ) ) ) | 8:09CV407 |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| U.S. BANK NATIONAL ASSOCIATION, | ) ) | |
| Defendant. | ) ) ) | |

        This matter is before the court on the motion to dismiss, Filing No. 19, plaintiff's

amended complaint, Filing No. 15, filed by defendant U.S. Bank National Association.[1]

The plaintiff's amended complaint lists ten causes of action arising out of the plaintiff's

participation in securities lending programs offered by the defendant, including:  (1)

declaratory judgment regarding a purported exculpatory provision in a contract; (2) breach

of contract; (3) negligence; (4) breach of fiduciary duty; (5) gross negligence; (6) negligent

misrepresentation;  (7)  fraudulent  misrepresentation;  (8)  fraudulent  concealment;  (9)

misrepresentation under the Minnesota Unlawful Trade Practices Act, Minn. Stat. §§

325D.09-325D.16; and (10) an accounting.  Filing No. 15.

**BACKGROUND**

*I.  Factual Allegations*

        The plaintiff is a not-for-profit fraternal benefit society incorporated in the State of

Nebraska. Filing No. 15, Amended Complaint ("Am. Compl."), at ¶ 1.  One of plaintiff's

objectives and purposes is to provide life insurance policies to its members.  *Id.* at ¶ 1.

_____

[1]Defendant's motion to dismiss , Filing No. 8, plaintiff's complaint, Filing No. 1, is dismissed as moot.

Defendant is a national bank association with its main office located in the state of Minnesota. *Id.* at ¶ 2. Since the 1970s, plaintiff and defendant have been involved in a relationship in which defendant has been in charge of investing plaintiff's publically-held bonds and stocks, and in return, plaintiff allowed defendant to keep a percentage of the return on plaintiff's investments. *Id.* at ¶ 23. In 1997, plaintiff and defendant entered into a securities lending agreement under which the defendant would provide securities lending and investment services to plaintiff. *Id.* at ¶ 24. In 2006, plaintiff and defendant executed an amended securities lending agreement, replacing the 1997 agreement. *Id.* at ¶ 25. This amended agreement incorporated by reference a securities lending portfolio which consisted of an offering memorandum and a short-term bond portfolio. *Id.* at ¶ 26. It also contains a choice of law provision declaring the laws of Minnesota control in the event of a dispute. *Id.* at ¶ 33. The defendant was the sole drafter of this amended agreement. *Id.* at ¶ 26.

The defendant represented to the plaintiff that defendant had significant experience and expertise in investing securities and that defendant would actively manage plaintiff's investments. *Id.* at ¶ 27. The defendant made these representations to induce plaintiff to sign the amended agreement, and plaintiff reasonably relied upon those representations in executing the amended agreement. *Id.* at ¶ 27. In a cover letter and attached memo, the defendant represented the amended agreement as being standard in the industry when it differed from standard industry agreements. *Id.* at ¶ 28. One such difference was a purported exculpatory provision. *Id.* at ¶¶ 28, 29.

After executing the amended agreement, the defendant sent plaintiff monthly, non-detailed statements that reflected only how much income both plaintiff and defendant

2

earned from plaintiff's investments. *Id.* at ¶ 35.  Prior to 2008, the defendant, on more than one occasion, represented to plaintiff that the plaintiff's investments were conservative, high quality, and low risk, and that the defendant would work in a close partnership with the plaintiff, affording the plaintiff the defendant's fiduciary expertise. *Id.* at ¶¶ 35, 38.  The defendant also represented to plaintiff that a conservative approach to risk management and defendant's fiduciary responsibilities to plaintiff strictly controlled the risks associated with plaintiff's investments. *Id.* at ¶ 39.  The plaintiff relied upon these representations. *Id.* at ¶ 35. The defendant expected plaintiff to rely upon these representations.  *Id.* at ¶ 40.

Some time prior to August 2007, the defendant invested the securities lending portfolio into asset-backed commercial paper issued by three entities. *Id.* at ¶¶ 49-50.  These three entities, referred to as structured investment vehicles, included KKR Atlantic Funding Trust, KKR Pacific Funding Trust, and Ottimo Funding, Ltd. *Id.* at ¶¶ 49-50.  The defendant did not conduct an independent investigation of the nature and quality of the assets backing that commercial paper, but instead simply bought commercial paper that rating agencies, such as Standard & Poor's, Moody's Investor Services, and Fitch Ratings, had rated highly. *Id.* at ¶¶ 51, 56.

As it turned out, Alt-A and subprime mortgage bonds secured the asset-backed commercial paper. *Id.* at ¶ 52.  The values for this asset-backed commercial paper fell sharply. *Id.* at ¶ 54.  Analysts projected this decline in value. *Id.* at ¶¶ 53-54.  Beginning in August 2007, investment rating agencies started to downgrade the rating of the commercial paper issued by the structured investment vehicles. *Id.* at ¶ 56. By November 2007, rating agencies rated all three structured investment vehicles as either "D," "Not Prime," or "junk." *Id.* at ¶ 56.  The defendant withheld from plaintiff information showing

3

the value of plaintiff's investments or how plaintiff's investments were performing overall so that plaintiff had no knowledge of its investments' decline in value. *Id.* at ¶ 35. Plaintiff had no means to determine independently how its investments were performing or to ascertain the investments' values. *Id.* at ¶ 35.

After the commercial paper declined in value, the three structured investment vehicles defaulted, and the defendant granted loan extensions to the structured investment vehicles without giving the plaintiff prior notice. *Id.* at ¶¶ 54, 61. The defendant knew or should have known that the rating agencies downgraded the ratings of the structured investment vehicles and that the structured investment vehicles defaulted, but did not provide any such information to the plaintiff. *Id.* at ¶¶ 55, 57. In 2008, following the commercial paper's decline in value, the defendant, for the first time, disclosed detailed monthly statements to plaintiff regarding the value of plaintiff's investments. *Id.* at ¶¶ 35, 59-60. Additionally, the head of the defendant's securities lending program represented to the plaintiff's vice president of investment that plaintiff's investments were still sound despite either knowing the representation was false or not knowing whether the representations were in fact true. *Id.* at ¶ 62. A couple months later, the defendant liquidated and restructured the plaintiff's securities lending portfolio, and did so without plaintiff's approval. *Id.* at ¶ 64. As a result, the defendant left the plaintiff holding commercial paper backed by poorly-performing Alt-A and subprime mortgages. *Id.* at ¶ 65. Consequently, the plaintiff suffered damages amounting to at least $29.7 million. *Id.* at ¶ 70. At the same time, the defendant earned twenty-five percent of the net income derived from plaintiff's investments, earning more than $3,500,000 in fees. *Id.* at ¶ 41.

4

## II. The Amended Agreement

The plaintiff and the defendant entered into the amended agreement on March 31, 2006.  Filing No. 21-1, Ex. A.  The seventeenth paragraph provides that the amended agreement "shall be construed and enforced in accordance with the laws of the State of Minnesota without reference to its conflicts or choice of law principles."  *Id.* at ¶ 17.  The second paragraph in the amended agreement states that the plaintiff appoints the defendant as its agent for the purpose of securities lending, and that the defendant agrees to act in such a capacity.  *Id.* at ¶ 2.  The eleventh paragraph reinforces this appointment by providing that the plaintiff "acknowledges that the [defendant] is acting as an agent on the [plaintiff's] behalf."  *Id.* at ¶ 10.[2]  The third paragraph provides that, under this arrangement, the plaintiff authorizes the defendant to perform various activities related to securities lending.  *Id.* at ¶ 3. The sixth paragraph in the amended agreement states that the defendant "shall include in a monthly report to the [plaintiff] daily information concerning all securities loans outstanding, including an accounting of all securities lending transactions.  *Id.* at ¶ 6.

One subsection within the ninth paragraph states that the plaintiff warrants that it reviewed and understood a document incorporated into the amended agreement, called the offering memorandum.  *Id.* at ¶ 9(f).  The offering memorandum discusses the short-term bond portfolio.  Filing No. 21-1, Ex. D.  The offering memorandum includes two

---

[2]Paragraph 11(d) states:  "The Customer acknowledges that the Bank is acting as an agent on the Customer's behalf in connection with the lending of the Customer's assets and the investment of cash received as Collateral for such Loans."  Filing No. 21-1, Ex. A, ¶ 10.

section titled "Objectives, Principal Strategies and Principal Risks," and "Risk Factors," which are relevant to this motion to dismiss. *Id.* at 2, 3.

The "Objectives, Principal Strategies and Principal Risks" section states that the short-term bond portfolio's objective is to "maximize current income to the extent consistent with the preservation of capital and liquidity." *Id.* at 2. However, that same provision also warns that the value of one's investment in the portfolio, "when redeemed, may be worth more or less than their original cost." *Id.* at 2. This provision also provides that the short-term bond portfolio would attempt "to meet its investment objectives by investing primarily . . . in debt securities."[3] *Id.* at 2. The types of debt securities in which the offering memorandum states the portfolio will "principally" invest includes, among other types of investments, mortgage-backed securities and asset-backed securities. *Id.* at 2-3. Furthermore, the offering memorandum states that "[a]t the time of purchase, (i) all securities . . . will qualify as 'first tier securities'" or "be rated 'A' or better by at least two nationally recognized statistical rating organizations," depending on the length of the investment's remaining maturity. *Id.* at 3.

The "Risk Factors" section first states that the investor "could lose money" due to daily changes in interest rates and other factors, and then provides a list of "principal risks." *Id.* at 3. The fourth principal risk listed states "An issuer of debt securities may not make timely principal or interest payments on its securities, or the other party to the contract may default on its obligations." *Id.* at 3. The eighth principal risk listed states:

---

[3]The amended agreement provides that "investing primarily" in debt securities means that "at least 80% of [the short term bond portfolio's] assets plus the amount of any borrowings for investment purposes" will be invested in debt securities. Filing No. 21-1, Ex. D, 2.

> The Portfolios invests in mortgage and asset-backed securities. Falling interest rates could cause faster than expected prepayments of obligations underlying those securities, which would likely be reinvested in securities with lower interest rates. On the other hand, rising interest rates could cause prepayments of the obligations to decrease, extending the life of mortgage and asset-backed securities with lower payments.

*Id.* at 4. The tenth principal risk listed states, "The Portfolio is actively managed and its performance therefore will reflect in part the Advisor's ability to make investment decisions that are suited to achieving the Portfolios [sic] investment objective. Due to its active management, the Portfolio could underperform other mutual funds with similar investment objectives." *Id.* at 4.

The tenth paragraph of the amended agreement provides for the "Bank's Responsibilities." Filing No. 21-1, Ex. A, ¶ 10. That provision states:

> The Bank's duties and responsibilities shall only be those expressly set forth in this Agreement. Neither the Bank nor its agents shall be responsible for any loss or liability arising from their performance of the Bank's duties under this agreement, except for direct loss or liability (but not consequential or punitive damages) arising from the Bank's, or its agent's, willful misfeasance, bad faith or gross negligence in the performance of the Bank's duties under this Agreement. In no event shall the Bank be liable for special, indirect or consequential damages, or lost profits or loss of business, arising under or in connection with this Agreement, even if previously informed of the possibility of such damages and regardless of the form of action.

*Id.* at ¶ 10. The eleventh paragraph, titled "Customer Responsibilities," contains a subsection that provides:

> The Customer agrees to reimburse the Bank and to hold the Bank harmless from and against any and all costs, expenses, damages, liabilities, or claims, including reasonable fees and expenses of counsel incurred by the Bank which the Bank may sustain or incur or which may be asserted against the Bank by reason of or as a result of any action taken or omitted by the Bank in connection with operating under this Agreement (including, but not limited to, actions or omissions related to the lending of Securities to Borrowers or the holding or investment of Collateral) other than those costs, expenses, damages, liabilities or claims arising out of the gross negligence, bad faith

7

or willful misconduct of the Bank.   The foregoing shall be a continuing obligation of the Customer. . . .

*Id.* at ¶11(f).

## STANDARD OF REVIEW

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 n.3. (2007) (*quoting* Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'"  *Id.* (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56.  In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 547.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal,* — U.S. —, —,129 S. Ct. 1937, 1949 (2009) (stating that the plausibility

standard does not require a probability, but asks for more than a sheer possibility that a

defendant has acted unlawfully.).

*Twombly* is based on the principles that (1) the tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions and

(2) only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*

at —, 129 U.S. at 1949-50.  Determining whether a complaint states a plausible claim for

relief is "a context-specific task" that requires the court "to draw on its judicial experience

and common sense."  *Id.* at —, 129 S. Ct. at 1950.  Accordingly, under *Twombly*, a court

considering a motion to dismiss may begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth.  *Id.*  Although legal

conclusions "can provide the framework of a complaint, they must be supported by factual

allegations."  *Id.*  When there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.*

Thus, the court must find "enough factual matter (taken as true) to suggest" that

"discovery will reveal evidence" of the elements of the claim.  *Twombly,* 550 U.S. at 558,

556; *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (explaining that something

beyond a faint hope that the discovery process might lead eventually to some plausible

cause of action must be alleged).  When the allegations in a complaint, however true, could

not raise a claim of entitlement to relief, the complaint should be dismissed for failure to

set a claim under Fed. R. Civ. P. 12(b)(6).  *Twombly,* 550 U.S. at 558; *Iqbal,* — U.S. at —,

129 S. Ct. at 1950 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

### DISCUSSION[4]

## I. Breach of Contract Claim

Under Minnesota law,[5] a plaintiff alleging breach of contract must plead three things: (1) the formation of a contract, (2) the plaintiff performed its conditions precedent, and (3) the defendant breached one of the contract's terms. *Motley v. Homecomings Financial, LLC*, 557 F. Supp. 2d. 1005, 1012-13 (D. Minn. 2008) (citing *Mandel v. Americana Community Bank*, 2004 WL 117563, *1 (Minn. Ct. App. Jan. 27, 2004)); *Thomas B. Olson & Associates, P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citing *Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974)) (citation omitted). It is not enough for a plaintiff to simply "recite the magic word 'breach' in order to avoid dismissal." *Motley*. 557 F. Supp. 2d at 1013 (citation omitted).

Courts will, however, "imply a covenant if necessary to effectuate the intent of the parties." *Plaza Assocs. v. Unified Development, Inc.*, 524 N.W.2d 725, 728 (Minn. Ct. App. 1994) (citation omitted). This is because "[w]hatever is necessarily implied in a contract is as much a part thereof as if expressly stated therein, but the implication must result from the language employed in the instrument or be indispensable to carrying the intention of

---

[4]The court does not address whether plaintiff is entitled to an accounting in this memorandum and order. An accounting is an equitable remedy, not a cause of action. *See Milner v. Farmers Ins. Exchange*, 748 N.W.2d 608, 611 (Minn. 2008); *Blohm v. Kelly*, 765 N.W.2d 147, 158 (Minn. Ct. App. 2009).

[5]The parties both rely on Minnesota law in this case.

the parties into effect." *Closuit v. Mitby*, 56 N.W.2d 428, 432-33 (Minn. 1953) (citation omitted).

Plaintiff alleges that (1) defendant entered into a written contract, (2) plaintiff performed all conditions precedent and obligations the contract required plaintiff to perform, and (3) defendant materially breached the terms of the contract in at least one of six different ways. Filing No. 15, Am. Compl., ¶¶ 81-82. Plaintiff alleges that as a result of any or all of these breaches, plaintiff incurred damages of at least $29.7 million. Filing No. 15, Am. Compl., ¶ 83. Plaintiff has alleged the formation of the contract and that it has performed all conditions precedent. So long as plaintiff alleges at least one fact that would show defendant breached a term, express or implied, of the contract, plaintiff has pleaded sufficient facts for its breach of contract claim.

One of the six ways plaintiff alleges defendant breached the contract is by providing monthly income statements that failed to account for all securities lending transactions and the value of the securities lending portfolio, how the portfolio was performing, or the value of any of plaintiff's investments of cash collateral. *Id.* at ¶ 82. The amended agreement specifically states that the defendant "shall include in a monthly report to the [plaintiff] daily information concerning all securities loans outstanding, including an accounting of all securities lending transactions." Filing No. 21-1, Ex. A, ¶ 6. Assuming plaintiff's factual allegations as true, the court finds that plaintiff has pleaded sufficient facts to survive defendant's motion to dismiss on its breach of contract claim.

## II. Claim for Breach of Fiduciary Duty

Under Minnesota law, the relationship between two persons determines whether a fiduciary relationship exists. *Thomas B. Olson*, 756 N.W.2d at 914. As a general rule, a

fiduciary enjoys a position that is superior in terms of authority and knowledge such that another party places in him or her a high level of confidence and trust. *Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn. 1985)*; *Thomas B. Olson & Assoc., 756 N.W.2d at 914* (citations omitted). "Disparity of business experience and invited confidence could be a legally sufficient basis for finding a fiduciary relationship." *Toombs, 361 N.W.2d at 809* (internal quotation omitted). Additionally, a principal-agent relationship may create a fiduciary relationship. *See PMH Properties v. Nichols, 263 N.W.2d 799, 801 (Minn. 1978)* ("If [defendant] can be labeled an agent of [plaintiff], . . . [defendant] would owe [plaintiff] a fiduciary duty").

A fiduciary owes a duty of loyalty to the beneficiary of the relationship. *Doyen v. Bauer, 300 N.W. 451, 454 (Minn. 1941)*. This means the fiduciary must act in the utmost good faith and for the beneficiary's sole benefit in matters concerning their relationship, and cannot put him or herself in an antagonistic relation to the beneficiary. *Village of Burnsville v. Westwood Co., 189 N.W.2d 392, 397 (Minn. 1971)* (citation omitted); *Dahl v. Charles Schwab & Co., Inc., 545 N.W.2d 918, 925 (Minn. 1996)* (citation omitted); *Doyen, 300 N.W. at 454*. Part of this good faith duty includes the fiduciary communicating all facts within its knowledge that might affect the beneficiary's rights or interests. *Westwood Co., 189 N.W.2d at 397* (citation omitted).

Plaintiff alleges that defendant acted in a fiduciary capacity with respect to plaintiff. Filing No. 15, Am. Compl., ¶ 93. The amended agreement entered into between plaintiff and defendant contains mutual provisions recognizing that the defendant would act as plaintiff's agent regarding investment activity as it related to the amended agreement. Filing No. 21-1, Ex. A., ¶¶ 2, 11. Additionally, plaintiff alleges that defendant represented

to plaintiff that defendant had significant expertise in securities investing.  Filing No. 15, Am. Compl., ¶ 27.  This is sufficient to establish that defendant owed plaintiff a fiduciary duty.

Plaintiff alleges that defendant placed its own interest above plaintiff's when it selected risky investments that were inconsistent with plaintiff's investment goals.  *Id.* at ¶ 97.  Plaintiff also alleges that defendant breached its fiduciary duty in one or more of nine different ways.  *Id.* at ¶ 96.  Two of these alleged breaches involve defendant failing to advise plaintiff of problems with plaintiff's investments, while another alleges defendant received warnings and did nothing regarding problems with plaintiff's investments.  *Id.* at ¶ 96.  A fiduciary's good faith duty requires the fiduciary to communicate to the beneficiary all facts within its knowledge that might affect the beneficiary's rights or interests.  Plaintiff has alleged sufficient facts in this regard.  As a result, the plaintiff pleaded sufficient facts to state a cause of action for breach of fiduciary duty.  Therefore, defendant's motion to dismiss plaintiff's cause of action for breach of fiduciary duty is denied.

### III.  Fraud Claims

#### (1) Fraudulent Misrepresentation

A plaintiff must plead fraud with specificity.  *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).  To succeed on a fraud claim, the plaintiff must prove five elements: (1) a party made a false representation of a past or existing material fact that is susceptible of knowledge; (2) that party made the representation knowing it was false or without knowing whether it was true or false, but represented it as his or her own knowledge; (3) that party made the representation with the intent to induce another to rely on it; (4) the other party acted in reliance on the representation; and (5) the other party's

13

reliance resulted in monetary damages. *Flynn v. Am. Home Products Corp.*, 627 N.W.2d 342, 349 (Minn. Ct. App. 2001) (citing *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986)). "A bad motive is not an essential element of fraud." *Spiess v. Brandt*, 41 N.W.2d 561, 566 (Minn. 1950) (citations omitted).

Plaintiff alleges that defendant represented to plaintiff that defendant would actively manage plaintiff's investments without a present intent to do so. Filing No. 15, Am. Compl., ¶ 114. Plaintiff alleges that this representation induced plaintiff to enter into the amended agreement with defendant. *Id.* at ¶¶ 13, 27. Plaintiff alleges that defendant misrepresented the amended agreement as being "standard in the industry" when, in fact, the amended agreement differed from standard industry agreements. *Id.* at ¶ 73. Plaintiff also alleges that the head of defendant's securities lending program represented to plaintiff's vice president of investment that plaintiff's investments were financially sound at a time when plaintiff's investments had each experienced at least one default. *Id.* at ¶¶ 62, 114.

Plaintiff alleges that the defendant either knew these representations were false when it made them, or it made them without knowing whether they were true or false. *Id.* at ¶¶ 62, 115. Plaintiff alleges that the defendant intended and expected plaintiff to, and knew plaintiff would, rely upon these representations when deciding whether to participate or continue participating in defendant's securities lending program. *Id.* at ¶¶ 40, 116. Plaintiff alleges that it justifiably relied upon these representations when it decided to participate and continue participating in the defendant's securities lending program. *Id.* at ¶ 117. Finally, the plaintiff alleges that its reliance on the defendant's false representations led to the plaintiff suffering at least $29.7 million in damages. *Id.* at ¶ 118. These factual

14

allegations present a plausible claim for fraudulent misrepresentation. As a result, the court denies the defendant's motion to dismiss as it relates to plaintiff's cause of action for fraudulent misrepresentation.

### (2) Fraudulent Concealment

Nondisclosure may constitute fraud if a party suppresses facts it is legally or equitably obligated to disclose to another party that is entitled to have that information communicated to him or her. *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 190 (Minn. 1999) (citation omitted). This is because concealing a material fact to a transaction while knowing that the other party presumes the fact does not exist is considered a fraud as much as denying the existence or stating the exact opposite of that fact. *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976) (citation omitted). In fact, "[o]ne who speaks must say enough to prevent his words from misleading the other party," "[o]ne who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party," and "[o]ne who stands in a confidential or [f]iduciary relation to the other party to a transaction must disclose material facts." *Richfield Bank & Trust*, 244 N.W.2d at 650. A fiduciary relationship exists when one party places so much confidence in a second party so that the second party has the ability to influence the other. *Flynn*, 627 N.W.2d at 350 (citing *Kennedy v. Flo-Tronics, Inc.*, 143 N.W.2d 827, 830 (Minn. 1966)).

As explained above with regard to plaintiff's cause of action for breach of fiduciary duty, the contract entered into between plaintiff and defendant, and the facts plaintiff alleges are sufficient to establish that defendant owed plaintiff a fiduciary duty. As a result, defendant had a duty to disclose to plaintiff material facts as it related to plaintiff's

securities lending transactions.  Plaintiff alleges that the defendant deliberately concealed at least four material facts from plaintiff resulting in a detrimental impact to plaintiff's interests. Filing No. 15, Am. Compl., ¶¶ 123-24.  Plaintiff alleges that as a proximate result of defendant deliberately concealing these material facts, plaintiff incurred damages of at least $29.7 million.  *Id*. at ¶ 125.  Assuming these factual allegations as true, plaintiff has alleged sufficient facts showing it is entitled to relief.  As a result, defendant's motion to dismiss is denied as it relates to plaintiff's cause of action for fraudulent concealment.

### IV.  Negligence Claims

   (1) Negligence

   Despite the alleged exculpatory clause, if the plaintiff can prove through discovery that defendant's fraud induced plaintiff to enter into the amended agreement, it is possible for defendant to be liable to plaintiff for negligence.  *See BankCherokee v. Insignia Development,* LLC, 779 N.W.2d 896, 899 (Minn. Ct. App. 2010) ("If fraud in the execution is proved, the result is 'no contract at all.'") (quoting Restatement (Second) of Contracts § 163 cmt. a (1981)).  Since the plaintiff pleaded sufficient facts for its fraud claims, the court will address plaintiff's negligence claim.[6]

   A claim for negligence requires a plaintiff prove four elements: (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered an injury; and (4) the defendant's breach proximately caused the plaintiff's injury.  *Bjerke v. Johnson,* 742 N.W.2d 660, 664 (Minn. 2007); *Engler v. Illinois Farmers Ins. Co.,* 706 N.W. 2d 764, 767 (Minn. 2005) (citation omitted).  Whether a defendant was negligent is

_____

   [6]The court does not address plaintiff's "cause of action" for declaratory judgment regarding the alleged exculpatory clause's validity and enforceability.  At this time, determining the alleged exculpatory clause's validity is not needed for plaintiff's claim for negligence to survive defendant's motion to dismiss, as previously explained.

usually a question of fact. *Canada By and Through Landy v. McCarthy*, 567 N.W.2d 496, 505 (Minn. 1997). However, whether a defendant owes a duty of care to the plaintiff is generally a question of law for the court to decide. *Bjerke*, 742 N.W.2d at 664; *Canada*, 567 N.W.2d at 504.

A defendant owes a plaintiff a duty of care if: (1) there is a special relationship between the parties; and (2) the risk of harm is sufficiently foreseeable. *Bjerke*, 742 N.W.2d at 665. If there is a special relationship or special circumstances, such as a long-term relationship, an agent should know that the principal is relying on the agent's judgment. *See Scottsdale Ins. Co. v. Transport Leasing/Contract, Inc.*, 671 N.W.2d 186, 196 (Minn. Ct. App. 2003). "A special relationship creating a duty on the part of a defendant to protect often involves some degree of dependence." *Bigos v. Kluender*, 611 N.W.2d 816, 820 (Minn. Ct. App. 2000) (citing *H.B. by and Through Clark v. Whittemore*, 552 N.W.2d 705, 708 (Minn. 1996)). In clear cases, the issue of foreseeability is a question of law for the court, but, in close cases, it is a question of fact for the jury. *Bjerke*, 742 N.W.2d at 667-68. A danger is foreseeable if it is objectively reasonable to expect the specific danger. *Whiteford by Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998) (citation omitted).

The circumstances of this case suggest that defendant did owe plaintiff a duty of care. First, the amended agreement entered into shows that the parties contemplated the defendant acting as the plaintiff's agent and the plaintiff relying and depending on defendant for investment services. Also, plaintiff alleges that plaintiff and defendant have been in a relationship of this nature since the early 1970s. Filing No. 15, Am. Compl., ¶ 23. This long-term relationship, in which defendant was to provide plaintiff with investment

services, suggests that defendant should have known that plaintiff relied upon defendant's judgment regarding its investments.  Second, in the context of securities and investments, it is objectively foreseeable that a plaintiff might lose money on its investments due to the negligence of a party the plaintiff employs to provide investment services.

As for the other three elements of negligence for which plaintiff must make sufficient allegations supporting his entitlement to relief, plaintiff alleges defendant breached its duty of care in six different ways, and plaintiff incurred damages of at least $29.7 million as a proximate result of defendant's breach.  *Id.* at ¶¶ 88-89.  These allegations, assumed true and construed in plaintiff's favor, raise plaintiff's right to relief above the speculative level.  As a result, the defendant's motion to dismiss plaintiff's cause of action for negligence is denied.

### (2)  Gross Negligence

Under Minnesota law, "[g]ross negligence is very great negligence or absence of even slight care, but [it is] not equivalent to wanton and willful conduct."  *Beehner v. Cragun Corp.*, 636 N.W.2d 821, 829 (Minn. Ct. App. 2001) (alterations in original) (internal quotation omitted).  "It is a heedless and palpable violation of legal duty representing the rights of others."  *State v. Al-Naseer*, 690 N.W.2d 744, 752 (Minn. 2005) (internal quotation omitted).  There must be "a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence."  *Al-Naseer*, 690 N.W.2d at 752.  Whether conduct constitutes gross negligence is generally a question of fact.  *See Chemical Bank v. Security Pac. Nat'l Bank*, 20 F.3d 375, 378 (9th Cir. 1994) (trier of fact determines what is gross negligence).

Plaintiff asserts that defendant's negligence was so substantial, egregious, aggravated, and of great magnitude, that it constituted gross negligence.  Filing No. 15,

Am. Compl., ¶ 103.  As explained above, plaintiff has pleaded facts sufficient to state a cause of action for negligence.  Since it is a factual question whether the conduct encompassed within those allegations is enough to constitute great negligence or the absence of even slight care, plaintiff has also pleaded sufficient facts for a cause of action in gross negligence.  Accordingly, defendant's motion to dismiss plaintiff's cause of action for gross negligence is denied.

   (3) Negligent Misrepresentation

   Under Minnesota law, the plaintiff must plead facts sufficient to satisfy five elements for a claim of negligent misrepresentation:  (1) the alleged misrepresenter owes the plaintiff a duty of care to convey information; (2) the alleged misrepresenter breached that duty by negligently giving false information; (3) the plaintiff reasonably relied on that false information; (4) that reasonable reliance proximately caused physical injury to the plaintiff; and (5) damages.  *Flynn*, 627 N.W.2d at 350-51 (citing *Smith v. Brutger Cos.*, 569 N.W.2d 408, 413 (Minn. 1997)).  It is essential that the alleged misrepresenter owe the plaintiff a duty of care.  *Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn. Ct. App. 2000).  The alleged misrepresenter owes the plaintiff a duty of care when the alleged misrepresenter supplies information to the plaintiff for the plaintiff's guidance (1) in the course of a dealing in which the alleged misrepresenter has a monetary interest, or (2) in the course of the misrepresenter's employment, profession, or business.  *Woodwind Homes*, 605 N.W.2d at 424.

   As explained above, the plaintiff's allegations and the amended agreement suggest the presence of a fiduciary relationship between plaintiff and defendant.  As a result of this relationship, the defendant had a duty to convey information to plaintiff.  *See  Richfield Bank & Trust*, 244 N.W.2d at 650 ("[o]ne who stands in a confidential or [f]iduciary relation

to the other party to a transaction must disclose material facts").  The plaintiff alleges that defendant provided at least four pieces of false information that plaintiff relied upon.  Filing No. 15, Am. Compl., ¶ 108.  Plaintiff also alleges that it incurred damages of at least $29.7 million as a proximate result of defendant's reporting this false information.  *Id.* at ¶ 111. These allegations are sufficient to state a cause of action for negligent misrepresentation, and, therefore, defendant's motion to dismiss as to this cause of action is denied.

### V.  Minnesota Unlawful Trade Practices Act, Minn. Stat. §§ 325D.09-325D.16

Minnesota's Unlawful Trade Practices Act ("MUPTA") provides, in part, that "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." Minn. Stat. Ann. § 325D.13.  Although MUPTA does not define the term "merchandise,"  other Minnesota consumer protection statutes do define "merchandise," and include services within its definition.  *See* Minn. Stat. § 325F.68 ("'Merchandise' means any objects, wares, goods, commodities, intangibles, real estate, loans, or services.").[7]   Minnesota's consumer protection statutes may protect a party, even if the party is sophisticated in its regular business dealings, so long as the party does not deal in the line of business at issue, or hold itself out as having special skill or knowledge in the line of business at issue.  See *Kinetic Co. v. Medtronic, Inc.*, 672 F.Supp.2d 933, 946 n.8 (D. Minn. 2009).   Under a consumer protection statute, such as MUPTA, if the circumstances meet the above requirements, a plaintiff "need only plead that the defendant engaged in conduct" the

---

[7]*See also Alternative Pioneering Sys., Inc. v. Direct Innovative Prods., Inc.*, 822 F. Supp. 1437, 1441 (D. Minn. 1993) (stating use analysis similar to analysis under Lanham Act, 15 U.S.C. § 1125, to analyze Minn. Stat. § 325D.13); 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services, . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act").

statute prohibits. *Kinetic Co., 672 F.Supp.2d at 945* (internal quotation omitted) (citing *Group Heal Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001)).

Plaintiff alleges that defendant provided securities lending services to plaintiff. Filing No. 15, Am. Compl., ¶ 24. Plaintiff alleges that its own purpose and objectives include issuing certificates for benefits, such as life insurance policies. *Id.* at ¶ 1. As an issuer of benefits, nothing suggests that plaintiff is sophisticated with respect to, or deals in, investing and securities lending. Plaintiff also alleges that defendant knowingly misrepresented the quality of its loans and services by representing that the defendant would actively manage and thoroughly investigate plaintiff's cash collateral investments, and by failing to invest conservatively. *Id.* at ¶ 132. The plaintiff has pleaded sufficient facts to state a claim for relief under MUPTA that is plausible on its face. As a result, defendant's motion to dismiss plaintiff's cause of action under MUPTA is denied.

THEREFORE, IT IS ORDERED that defendant's motion to dismiss, Filing No. 19, is denied.

DATED this 6th day of August, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.