IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY,** | ) ) ) | |
| Plaintiff, | ) ) | 8:09CV407 |
| v. | ) ) | ORDER |
| **U.S. BANK NATIONAL ASSOCIATION,** et al., | ) ) ) ) | |
| Defendants. | ) | |

    This matter is before the court on the plaintiff's Motion to Compel (Filing No. 277). The plaintiff Woodmen of the World Life Insurance Society seeks an order of the court compelling the defendant U.S. Bank National Association to produce documents requested by Woodmen of the World Life Insurance Society in its requests for production of documents. U.S. Bank National Association contends the documents are subject to privilege.

    Woodmen of the World Life Insurance Society filed a brief (Filing No. 278) and an index of evidence (Filing No. 279) in support of the motion. U.S. Bank National Association filed a brief (Filing No. 282) and an index of evidence (Filing No. 283) in opposition to the motion to compel. Woodmen of the World Life Insurance Society filed a brief (Filing No. 286) and an index of evidence (Filing No. 287) in reply. All briefs and indexes of evidence were filed under restricted access.

## BACKGROUND

    This action arises out of losses the plaintiff sustained through its participation in the defendants' securities lending and cash collateral investment program. **See** Filing No. 143 - Second Amended Complaint. Woodmen of the World Life Insurance Society (Woodmen) alleges the defendants U.S. Bank National Association, U.S. Bancorp Asset Management, Inc., and U.S. Bancorp (collectively U.S. Bank) breached a securities lending agreement and U.S. Bank and its employee, the defendant Emil C. Busse, Jr. (Busse), made misrepresentations and omissions of material fact with respect to investments in mortgage-

backed securities. *Id.* The parties' current dispute relates to discovery sought by Woodmen.

Woodmen argues U.S. Bank, in response to Woodmen's requests for documents and upon order of this court (Filing No. 88), produced several privilege logs. Woodmen argues U.S. Bank "asserts attorney-client and work product protection for thousands of documents . . . [without] set[ting] forth a sufficient factual basis upon which valid assertions of privilege may rest." **See** Filing No. 277 - Motion p. 2. Woodmen argues U.S. Bank has waived its claims of privilege by failing to set out sufficient facts to establish the basis for its claims of privilege, and asks the court to "direct[ ] U.S. Bank to produce all documents withheld on the basis of privilege, or alternatively, order[ ] that all documents withheld by U.S. Bank on the basis of privilege be reviewed by a special master in order to determine the validity of U.S. Bank's claims of privilege." *Id.* at 4. While Woodmen generally challenges the entirety of U.S. Bank's privilege log, Woodmen states "[b]ecause of the avalanche of documents involved, it is not possible to deal with each individual assertion of privilege." **See** Filing No. 278 - Brief p. 7. Instead, Woodmen singles out three specific documents or categories of documents and discusses U.S. Bank's assertions of the attorney-client privilege and the work product doctrine with respect to each. **See** Filing Nos. 278 and 286. The court will describe each document seriatim.

    **a.**    **Goodwin Procter report** - In early April 2008, during an internal investigation of Busse's reallocation of lending opportunities conducted by David Lui, Chief Compliance Officer for FAF Advisors, Inc.[1] (FAF Advisors), U.S. Bancorp, FAF Advisors' parent company, retained the Boston law firm Goodwin Procter LLP (Goodwin Procter) to conduct an independent investigation and prepare a report regarding Busse's actions. **See** Filing No. 283 - Manzoni Decl. ¶ 4 (Page ID# 4903). Goodwin Procter conducted the investigation "by collecting and reviewing documents, as well as by interviewing various U.S. Bank, U.S. Bancorp, and FAF Advisors employees. The investigation resulted in preparation of numerous memoranda documenting the work of Goodwin Procter attorneys,

---

[1] FAF Advisors, Inc. is now known as U.S. Bancorp Asset Management, Inc., a named defendant in this action. **See** Filing No. 143 - Second Amended Complaint.

a report describing Goodwin Procter's factual findings, and a report describing Deloitte's loss analysis." **See** Filing No. 283 - Manzoni Decl. ¶ 5 (ID# 4904). Goodwin Procter issued its report (the Goodwin Procter report) on June 18, 2008. **See** Filing No. 279 - Ex. K - Lui's PowerPoint presentation (Page ID# 4734).

      **b.**      **Deloitte report** - In the process of its investigation, Goodwin Procter retained the services of Deloitte Financial Advisory Services, LLP (Deloitte) to determine which investors had been negatively affected by the reallocations and the amount of damages for the affected investors. **See** Filing No. 283 - Manzoni Decl. ¶ 4 (Page ID# 4903). U.S. Bank made reimbursements to the investors identified by this analysis to the extent of their damages determined by Deloitte. **See** Filing No. 279 - Ex. 2 Lui Depo. p. 81 (Page ID# 4383). The Deloitte report was issued on June 26, 2008. **See** Filing No. 279 - Ex. K - (Page ID# 4736). U.S. Bank produced a summary of the Deloitte report on December 6, 2011, by agreement of the parties with the express condition that U.S. Bank is not waiving its claim of privilege with respect to other related materials. **See** Filing No. 279 - Ex. 1 Vipond Aff. ¶ 15. Woodmen seeks an unredacated copy of the report.

      **c.**      **Rule 38a-1 Annual Compliance report** (Rule 38a-1 report) - The Securities and Exchange Commission (SEC) requires chief compliance officers at registered investment companies to provide a written report to the board of directors on at least an annual basis. **See** 17 C.F.R. § 270.38a-1(a)(4)(iii). As Chief Compliance Officer and under the direction of Charles R. Manzoni, Jr., then Vice President of U.S. Bank and General Counsel of FAF Advisors, Lui began his own compliance investigation on March 31, 2008. **See** Filing No. 279 - Ex. K - Lui's PowerPoint presentation (Page ID# 4722). According to Lui, "Rule 38a-1 . . . calls for a written report which we came out with every year, and it calls for material compliance matters to be reported to a board of directors in that written report." **See** Filing No. 279 - Ex. 2 Lui Depo. p. 12 (Page ID# 4368). Lui issued his annual compliance report on April 16, 2008, which was presented at the Board of Directors' meeting on May 6-7, 2008. **See** Filing No. 279 - Ex. K - (Page ID# 4726); Filing No. 279 - Ex. E - Rule 38a-1 report (redacted). The Rule 38a-1 report was initially

produced by U.S. Bank, then "clawed back" and replaced with a redacted version. **See** Filing No. 279 - Ex. J.

## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). A person opposing production of documents based on privilege or seeking protection for documents that fall under the attorney-client privilege has the burden of establishing the privilege applies. **See** Fed. R. Civ. P. 26(b)(5). Similarly, a person opposing production bears the burden of establishing a waiver, by disclosure or otherwise, did not occur. **See** *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003) (Bye, J., concurring).

1.   **Meet and Confer**

The parties disagree as to whether Woodmen made an adequate showing of its efforts to meet and confer with U.S. Bank in an attempt to resolve their discovery disputes prior to filing the motion to compel. The Local Rules state:

> To curtail undue delay in the administration of justice, this court only considers a discovery motion in which the moving party, in the written motion, shows that after personal consultation with opposing parties and sincere attempts to resolve differences, the parties cannot reach an accord. This showing must also state the date, time and place of the communications and the names of all participating persons. "Personal consultation" means person-to-person conversation, either in person or on the telephone. An exchange of letters, faxes, voice mail messages, or e-mails is also personal consultation for purposes of this rule upon a showing that person-to-person conversation was attempted by the moving party and thwarted by the nonmoving party.

**See** NECivR 7.0.1(i). The Federal Rules of Civil Procedure also require good faith efforts by the moving party to resolve the dispute, prior to filing a motion to compel or for

protective order, the absence of which precludes the issuance of an award of expenses. **See** Fed. R. Civ. P. 37(a)(5).

U.S. Bank contends Woodmen did not meet and confer about the alleged deficiencies in U.S. Bank's latest produced privilege log. U.S. Bank suggests the "claimed deficiencies are easily explained or easily fixed," and notes U.S. Bank has "cooperated with Woodmen with respect to U.S. Bank's privilege log from the beginning." **See** Filing No. 282 - Response p. 1. U.S. Bank states it previously addressed Woodmen's concerns and provided additional information and revised its privilege log in response to Woodmen's concerns. However, U.S. Bank states Woodmen did not confer with U.S. Bank regarding any concerns about the most recent version of the privilege log and instead filed the motion to compel.

Woodmen's motion to compel does not include any discussion of its efforts to meet and confer with U.S. Bank to resolve their differences prior to filing the motion. Woodmen's brief includes a general description of multiple written and oral conversations with U.S. Bank over the year-long period during which U.S. Bank produced several versions of its privilege log. **See** Filing No. 278 - Brief. In addition, Woodmen submits copies of correspondence between counsel addressing these issues. **See** Filing No. 279 - Index. However, Woodmen does not include details of any "meet and confer" as required by NECivR 7.0.1(i). According to Woodmen, the parties continue to disagree about the sufficiency of U.S. Bank's privilege log. In its reply brief, Woodmen argues U.S. Bank's latest revised privilege log, intended to supersede all others, contains the same "conclusory assertions of privilege without factual support," and despite U.S. Bank's claim of reviewing its assertions of privilege, U.S. Bank did not produce any additional documents. **See** Filing No. 286 - Reply p. 3. Woodmen also argues that in spite of multiple requests for the Goodwin Procter and Deloitte reports, U.S. Bank refuses to provide them, erroneously maintaining the reports are privileged under the holding of ***Diversified Indus., Inc. v. Meredith***, 572 F.2d 596 (8th Cir. 1978) (en banc). Woodmen contends "[a]t some point, further efforts to resolve discovery disputes becomes futile." **See** Filing No. 286 - Reply p. 3. Woodmen maintains it met its obligation to meet and confer with U.S. Bank before filing the motion to compel. Woodmen argues "[t]o require

5

more would permit U.S. Bank to forestall judicial resolution of these claims by endlessly revising their privilege logs, releasing information in drips and drabs, until the clock runs out on discovery." *Id.* at 4.

Woodmen arguably did not comply with the local rule. Some of its concerns with U.S. Bank's privilege log might have been addressed and potentially resolved had the parties conferred. For example, the parties might have addressed and resolved Woodmen's complaint that U.S. Bank's privilege log lists documents for which either the author or the recipient of the document is not identified, and that "U.S. Bank has invented a new doctrine of privilege whereby documents 'attached to a privileged document' become privileged themselves." **See** Filing No. 278 - Brief p. 8-9. U.S. Bank offered some explanation for those criticisms in its brief. **See** Filing No. 282 - Response p. 12-15. However, the issues surrounding U.S. Bank's assertion of the attorney-client privilege and application of the work-product doctrine with respect to the Goodwin Procter report, the Deloitte report, the Rule 38a-1 report, and their supporting materials, are not likely to be resolved by the parties. Moreover, Woodmen's belief that any "meet and confer" would be futile may be well founded. The court notes that when document production began in 2010, the court deemed it necessary to direct U.S. Bank to provide a privilege log by a court-ordered deadline and to supplement the log every two weeks until document production was completed. **See** Filing No. 88 - Order. Apparently, Woodmen has been receiving revised or supplemented privilege logs from U.S. Bank for more than a year and Woodmen's concerns about the adequacy of those logs have not yet been addressed to its satisfaction. **See** Filing No. 283 - Exs. C, E-G, J email correspondence. In any event, the court will address the merits of U.S. Bank's assertions of the attorney-client privilege and work product doctrine with respect to the Goodwin Procter report, the Deloitte report and the Rule 38a-1 report.

## 2. Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence provides that state law supplies the rule of decision on privilege in diversity cases. *White Cap Constr. Supply, Inc. v. Tighton Fastener & Supply Corp.*, 2010 WL 3259355, at *8 (D. Neb. Aug. 16, 2010) (**citing**

*Blackledge v. Martin K. Eby Constr. Co., Inc.*, 542 F.2d 474, 476 n.1 (8th Cir. 1976) ("Privileges created by state law are, of course, applicable in a diversity action.")); *Gray v. Bicknell*, 86 F.3d 1472, 1482 (8th Cir. 1996) ("In diversity actions, state law determines the existence and scope of attorney-client privilege.") (internal citations omitted). Under Nebraska law:

> A client has a privilege to refuse to disclose and to prevent any other person from **disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services** to the client (a) between himself or his representative and his lawyer or his lawyer's representative, or (b) between his lawyer and the lawyer's representative, or (c) by him or his lawyer to a lawyer representing another in a matter of common interest, or (d) between representatives of the client or between the client and a representative of the client, or (e) between lawyers representing the client.

Neb. Rev. Stat. § 27-503(2) (emphasis added). "A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Neb. Rev. Stat. § 27-503(1)(d). Such communications between a client or a client's representative and the lawyer are privileged. A "client" is "a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him." Neb. Rev. Stat. § 27-503(1)(a).

The primary purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The party asserting attorney-client privilege has the burden of proving that the information sought is protected." *State ex. rel Stivrins v. Flowers*, 729 N.W.2d 311, 316 (Neb. 2007); **see also** *Greenwalt v. Wal-Mart Stores, Inc.*, 567 N.W.2d 560, 566 (Neb. 1997) ("In response to a motion to compel production, the asserting party must make out a prima facie claim that the privilege or doctrine applies."). Therefore, one issue before the court is whether the communications were

made for the purpose of seeking legal advice. In addition, the asserting party must show "the information contained in the requested documents includes confidential communications, as required by the attorney-client privilege." *Greenwalt*, 567 N.W.2d at 567. Moreover, the privilege protects only the disclosure of attorney-client communications and does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn*, 449 U.S. at 395.

In support of its position that the attorney-client privilege applies to the reports sought by Woodmen, U.S. Bank relies heavily on the decision of the Eighth Circuit in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977). In that case, Diversified Industries, Inc. (Diversified), in the course of earlier "proxy fight" litigation, discovered the existence of a "slush fund" used to bribe purchasing agents from other companies that purchased Diversified's product. *Id.* at 600. In light of this discovery and the attention it drew from the SEC, Diversified's board of directors decided an internal investigation of the company's business practices was warranted and a law firm was employed to conduct an investigation and report to the board of directors. *Id.* In the course of its investigation the law firm retained the services of an accounting firm and its findings were included in the law firm's report to the board. *Id.* at 601. When a customer of Diversified, brought suit against Diversified alleging an unlawful conspiracy, it sought to obtain the law firm's report. Diversified withheld the report maintaining it was subject to the attorney-client privilege and the work product doctrine. In determining the report was protected by the attorney-client privilege, the Eighth Circuit held that when a matter is committed to a professional legal advisor, it is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary." *Diversified*, 572 F.2d at 610; **see also** *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994).

In arguing that "[t]he ***Diversified*** court squarely faced the issues presented here respecting the application of attorney-client privilege," U.S. Bank overlooks an important distinction. That is, the case before this court is a diversity action and, as U.S. Bank has acknowledged, Nebraska law governs the attorney-client privilege issue in diversity cases. As such, the court finds U.S. Bank's argument that the decision of the Eighth Circuit in ***Diversified*** "constitutes binding precedent supporting denial of Woodmen's motion"

unconvincing. **See** Filing No. 282 - Response p. 22. U.S. Bank has failed to show that Nebraska has adopted the Eighth Circuit's ***Diversified*** decision, which shifts the burden from the party withholding the documents to the party seeking the documents. Nebraska case law clearly places the burden of proof on the party asserting the privilege. **See** ***Greenwalt***, 567 N.W.2d at 566.

### a. Goodwin Procter report and Deloitte report

Woodmen argues the reports are not protected by the attorney-client privilege because U.S. Bank fails to establish Goodwin Procter was retained to provide "legal advice" or that Goodwin Procter's work was "legal in nature." **See** Filing No. 278 - Brief p. 16-17. Woodmen argues the Goodwin Procter law firm was retained as an independent investigator into the facts surrounding Busse's improper reallocation activities, not to provide professional legal services. Woodmen contends the law firm was retained merely to conduct an "independent factual investigation and provide U.S. Bank with cover so U.S. Bank could credibly represent to its clients and to the SEC that Busse's wrongdoing had been remedied." *Id.* at 17. "The fact that this investigator[, Goodwin Procter,] was a law firm does not convert a factual investigation into a legal one." *Id.* at 15.

In opposition to Woodmen's arguments, U.S. Bank relies on the similarities between the retention of Goodwin Procter by FAF Advisors to investigate Busse's reallocation activities and Diversified's retention of a law firm to investigate the "slush fund." **See** Filing No. 282 - Response p. 21-22. U.S. Bank argues that it faced "a likely prospect of litigation with affected clients, as well as the possibility of the prompt adversarial action, including judicial or administrative enforcement action by the SEC" prior to retaining Goodwin Procter. *Id.* at 21; Filing No. 283 - Manzoni Decl. ¶ 5 (Page ID# 4904). U.S. Bank argues Woodmen's assertions that Goodwin Procter's role was limited to conducting an independent investigation into issues of fact "have no bearing on the privileged status that is accorded under ***Diversified***." **See** Filing No. 282 - Response p. 22. Further, U.S. Bank contends Woodmen has failed to make a clear showing disputing U.S. Bank's claim that the Goodwin Procter and Deloitte reports were prepared in response to a request for legal advice.

As discussed above, the court finds that the burden shifting recognized by the court in ***Diversified*** does not apply to this matter which is before the court under diversity jurisdiction. The court cannot assume Goodwin Procter's investigative work was work acting as an attorney for purposes of privilege. The court finds U.S. Bank fails to make a sufficient showing that the investigation was committed to Goodwin Procter, a professional legal advisor, for legal advice rather than as an independent investigation to aid FAF Advisors in determining the extent of Busse's reallocation activities and their impact on investors in an effort to reimburse those affected. Accordingly, U.S. Bank has not met its burden of showing such documents are subject to the attorney-client privilege.

### b.  Rule 38a-1 report

U.S. Bank provided Woodmen with a redacted version of the Rule 38a-1 report claiming the withheld portions contain attorney-client privileged communications obtained by Lui, as chief compliance officer obtained during his internal investigation into Busse's reallocation activities. Woodmen argues that Rule 38a-1 reports are "meant to be made available to the [SEC] and the [SEC] staff and, thus they are not subject to the attorney-client privilege, the work-product doctrine, or other similar protections." **See** Filing No. 278 - Brief p. 18-19 (**citing** 68 F.R. 74714–01 n.94 (Rule 381-1 Adopting Release)). Woodmen contends U.S. Bank's position that information contained in the Rule 38a-1 report is confidential is not credible. **See** Filing No. 278 - Brief p. 19. In response, U.S. Bank argues the language of the Adopting Release should be interpreted as prohibiting claims of privilege only with respect to providing the Rule 38a-1 report to the SEC, not with respect to parties in separate litigation. **See** Filing No. 282 - Response p. 30.

The court finds that although the Rule 38a-1 report is subject to disclosure to the SEC, the report was prepared by Lui, the chief compliance office and an attorney, and ultimately disclosed to the SEC "in furtherance of the rendition of professional legal services to the client" and as such may be considered a confidential communication under Nebraska law. **See** Neb. Rev. Stat. § 27-503(1)(d). As such, the Rule 38a-1 report is subject to the attorney-client privilege.

### *3.     Work-Product Doctrine*

In addition to the attorney-client privilege, a party may shield information from discovery if it is subject to the attorney work-product doctrine.  The work product doctrine is "distinct from and broader than the attorney-client privilege." *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977) (**quoting** *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975)).  "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  The work-product doctrine was established by *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now codified in Fed. R. Civ. P. 26(b)(3)(A):  "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  However, under certain circumstances, such materials may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  In any event, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).[2]

---

[2]     The doctrine was designed to prevent "'unwarranted inquiries into the files and mental impressions of an attorney'" and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987) (**quoting** *Hickman v. Taylor*, 329 U.S. 495 (1947)). . . .
   There are two types of protected work product.  "Ordinary" work product is subject to production only upon a showing of substantial need and inability to secure the substantial equivalent without undue hardship.  *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988). . . . "Opinion" work product includes documents that contain the mental impressions, conclusions or opinions of an attorney and is discoverable only in "rare and extraordinary circumstances." *In re Chrysler Motors Corp.*, 860 F.2d at 846; *Simon*, 816 F.2d at 402 n.3 (**quoting** *In re Murphy*, 560 F.2d 326, 336 n. 20 (8th Cir. 1977)).  Opinion work product is virtually absolutely immune from discovery.  *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973).
*Bieter Co. v. Blomquist*, 156 F.R.D. 173, 179 (D. Minn. 1994).

11

As relevant here, "[w]ork-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E.*, 600 F.3d at 622 (internal quotation and citation omitted). Work-product protected documents are only those documents prepared under the prospect of litigation. *Id.* Accordingly, "precautionary documents," for example those documents "developed in the ordinary course of business" or for the "remote prospect of litigation" are not subject to protection. *Id.* A party must show the disputed documents were "prepared because some articulable claim, *likely* to lead to litigation, [has] arisen." *Id.* (internal quotation and citation omitted). Determining whether documents were prepared in anticipation of litigation is a fact question governed by federal law. ***Baker v. General Motors Corp.***, 209 F.3d 1051, 1053 (8th Cir. 2000); ***St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.***, 197 F.R.D. 620, 627 (N.D. Iowa 2000). The test within the Eighth Circuit is

> whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

*Simon*, 816 F.2d at 401 (**quoting** 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 198-99 (1970)). **See also** *Diversified*, 572 F.2d at 604 ("[T]he work product rule does not come into play merely because there is a remote prospect of litigation.").

### a. Goodwin Procter report and Deloitte report

Woodmen argues U.S. Bank has failed to establish that the Goodwin Procter and Deloitte investigations were performed in anticipation of litigation. Rather, Woodmen contends the purpose of those investigations was to determine which investors had been negatively affected by Busse's reallocations and to make restitution. Woodmen argues the investors were not notified of Busse's actions until after U.S. Bank had made restitution to those identified as being affected by Busse's reallocations as determined by Goodwin Procter and Deloitte investigations. **See** Filing No. 286 - Reply p. 6.

U.S. Bank argues it anticipated litigation after it discovered Busse's reallocation activity because Busse's actions caused some investors to have increased risk and others did not get an equitable share of lending opportunities. "Because of the certain prospect of litigation, U.S. Bank retained Goodwin Procter in order to understand the full scope of this problem and to advise U.S. Bank concerning potential solutions–in short, to obtain classically privileged legal advice." **See** Filing No. 282 - Response p. 24. According to Manzoni,

> [i]t was clear to [him] as General Counsel of FAF Advisors that such reallocation activity would likely need to be reported to the . . . [SEC] and very possibly prompt adversarial action, including judicial or administrative enforcement action by the SEC against U.S. Bank. [He] also [knew] that because the reallocation activity denied certain securities lending participants the equitable lending opportunities they were entitled to increased exposure to certain risks in the Short Term Bond Fund and U.S. Bank faced a very real and likely prospect of litigation with affected clients.

Filing No. 283 - Manzoni Decl. ¶ 3 (Page ID# 4903).

U.S. Bank has failed to demonstrate a reasonable anticipation of litigation existed when FAF Advisors retained Goodwin Procter to conduct an independent investigation in early April 2008. The court finds Manzoni's December 22, 2011, declaration to the contrary self-serving in the face of Woodmen's challenge to U.S. Bank's assertion of the work-product doctrine and not supported by the deposition testimony of Lui. **See** Filing No. 279 - Ex. 2 Lui Depo. Upon discovery of Busse's reallocation activity, FAF Advisors was left to evaluate or assess the ramifications of Busse's alleged manipulation of lending opportunities and determine an efficacious course of action. By retaining Goodwin Procter as an independent entity to investigate Busse's recently discovered activities, FAF Advisors did just that. Arguably, FAF Advisors chose to follow the recommendations of Goodwin Procter and Deloitte by reimbursing those investors identified as being affected by Busse's reallocation actions, presumably decreasing the likelihood of litigation.

### b. Rule 38a-1 report

Any argument put forth by U.S. Bank suggesting that the Rule 38a-1 report was prepared in preparation for litigation clearly fails. The Rule 38a-1 report was prepared by FAF Advisor's chief compliance officer, Lui, pursuant to the SEC rules and arguably in the ordinary course of business. "Rule 38a-1 . . . calls for a written report which we came out with every year, and it calls for material compliance matters to be reported to a board of directors in that written report." **See** Filing No. 279 - Ex. 2 Lui Depo. p. 12 (Page ID# 4368). As such, U.S. Bank's assertion of work-product protection of the Rule 38a-1 report cannot be sustained.

### 4. Waiver

The party claiming the attorney-client privilege must show not only that the privilege was applicable absent any waiver, but also that a waiver did not occur.[3] Pursuant to Nebraska law:

> "A person upon whom these rules confer a privilege against disclosure of a confidential matter or communication waives the privilege if he or his predecessor, while holder of the privilege, voluntarily discloses or consents to disclosure of any significant part of the matter or communication. This rule does not apply if the disclosure is itself a privileged communication."

Neb. Rev. Stat. § 27-511.

Although the court finds that the attorney-client privilege does not apply to the Goodwin Procter and Deloitte reports, the court will briefly address the issue of waiver. In addition to its argument that the attorney-client privilege is not available to U.S. Bank, Woodmen argues in the alternative that U.S. Bank waived any such privilege by disclosing information contained in the Goodwin Procter and Deloitte reports, and the Rule 38a-1 report to other participants in the Short Term Bond Fund, as well as to the SEC. **See** Filing No. 278 - Brief p. 19-24. The court will address each assertion of waiver along with U.S. Bank's response.

---

[3]Finding that work product doctrine does not apply to the three reports sought by Woodmen, a discussion of waiver with respect to that doctrine unnecessary.

### a. Disclosures to Participants in the Short Term Bond Fund

Woodmen contends Kenneth Delecki, head of U.S. Bank's securities lending program, in a letter to Bill Sanden, representing the 8th District Electrical Pension Plan (8th District), discussed various findings of the Goodwin Procter and Deloitte investigations and described Deloitte's process for identifying those investors affected by Busse's reallocation activities and determining the level of reimbursement required. *Id.* at 23-24; **See** Filing No. 279 - Ex. H. U.S. Bank contends the reports were not disclosed to the 8th District but rather "a limited number of certain facts, which are not privileged" were disclosed and such limited disclosure "cannot support a waiver." **See** Filing No. 282 - Response p. 29-30.

In addition, Woodmen argues

> U.S. Bank did more than disclose the end results of Goodwin Procter and Deloitte's work, however. It assured at least one customer that U.S. Bancorp would 'provide [it] with a copy of the final report produced by such counsel with respect to the facts of these events.' . . . Presumably, U.S. Bancorp made good on its promise to the client and provided a copy of the Goodwin Procter report. By doing so, it waived any privilege that may have attached to this document and any related materials.

**See** Filing No. 278 - Brief p. 24. In response, U.S. Bank states that the "customer" referred to by Woodmen, U.S. Bank Pension Plan (Pension Plan), is "so closely tied to U.S. Bank, it must be considered an affiliate." **See** Filing No. 282 - Response p. 28. As such, U.S. Bank describes disclosure of the Goodwin Procter report to the Pension Plan as a "limited disclosure . . . across the corporate structure to officers and employees of U.S. Bank who administered the Pension Plan consistent with maintenance of confidentiality of the document." *Id.* at 28-29. In its reply brief, Woodmen states "[t]he Pension Plan not a wholly owned subsidiary or affiliate of U. S. Bank" but rather is "a separate legal entity and a participant in the Long Term Bond Fund" and as such "had the same right to sue U.S. Bank for damages arising out of the improper reallocation activities as did Woodmen." **See** Filing No. 286 - Reply p. 12-13.

The court finds the correspondence between Joseph M. Ulrey, III, of FAF Advisors, and Christopher Alan Weals, counsel for the Pension Plan, undermine U.S. Bank's position

that disclosure of the Goodwin Procter report to the Pension Plan does not constitute a waiver of the attorney-client privilege. **See** Filing No. 279 - Exs. F & G. Moreover, the court finds U.S. Bank fails to meet its burden of showing it did not waive privilege with respect to the Deloitte report when it discussed the accounting firm's methodology in correspondence with the 8th District.

### b. Disclosures to the SEC

Woodmen contends information obtained from Lui's internal investigation, Goodwin Procter's investigation, and Deloitte's analysis was included in a PowerPoint presentation given to SEC examiners after U.S. Bank voluntarily reported Busse's reallocation activities to the SEC therefore waiving U.S. Bank's claim of privilege. **See** Filing No. 278 - Brief p. 20. U.S. Bank argues that under the Eighth Circuit's analysis in ***Diversified***, disclosures to the SEC do not result in waiver under that case's recognition of a "selective waiver." Woodmen argues that U.S. Bank's reliance on the Eighth Circuit's acknowledgment of "selective waiver" with respect to disclosures to the SEC is misplaced under the circumstances in this case. The court agrees.

As discussed above, Nebraska law governs attorney-client privilege issues in diversity cases. U.S. Bank has failed to show Nebraska has adopted the holding of the Eighth Circuit with respect to "selective waiver" or that "selective waiver" is consistent with Nebraska law.[4] In any event, the court notes U.S. Bank overlooks an important difference between the disclosure to the SEC in ***Diversified*** and the disclosure to the SEC in the case before the court. In ***Diversified***, the law firm's report was produced to the SEC pursuant to a subpoena. *Diversified*, 572 F.2d at 604 n.1. In the matter before the court, the reports were provided to the SEC after Lui contacted the SEC and notified it of Busse's reallocation activities. "The sense that we had internally was that the issue was of a nature that the SEC, while it's not required, would appreciate having it disclosed to them through a voluntary mechanism." **See** Filing No. 279 - Ex. 2 Lui Depo. p. 41 (Page ID# 4369).

---

[4]U.S. Bank cites a number of cases from this court, however, none of those cases are diversity cases and none indicate that the "selective waiver" recognized by the Eighth Circuit in ***Diversified*** is applicable to diversity cases in this district.

For the reasons stated, the court finds U.S. Bank failed to meet its burden of showing that its disclosures to the SEC did not constitute a waiver of the attorney-client privilege.

In any event, had the court found the privilege to apply, the court would find that U.S. Bank failed to meet its burden of showing that no waiver of any such privilege occurred.

### 5.   Sufficiency of U.S. Bank's privilege log

Woodmen argues "U.S. Bank has, with few exceptions, provided nothing but conclusory assertions of privilege, with no further explanation. In many instances, the information provided could not even arguably support a claim of privilege." **See** Filing No. 278 - Brief p. 8. Woodmen asserts it is unable to address "each individual assertion of privilege" due to the large number of documents withheld. *Id.* at 7. Nevertheless, Woodmen contends that, based on the inadequacy of its privilege log, U.S. Bank should be ordered to produce all of the withheld documents. *Id.* at 9.

In response, U.S. Bank contends its privilege log contains the information required by the initial progression order and further, any specific deficiencies or confusion in the privilege log can be addressed by the parties. **See** Filing No. 282 - Response p. 12-16. Therefore, as discussed above, the court has limited its decision to those three categories of documents described and discussed in Woodmen's motion to compel and its briefs in support of that motion, and will leave the remaining unspecified documents for the parties to address between themselves.

### CONCLUSION

U.S. Bank failed to meet its burden of establishing that the Goodwin Procter report, the Deloitte report, and the Rule 38a-1 report are entitled to protection under either attorney-client privilege or work product doctrine or that any such privilege has not been waived. The court orders those reports be produced to Woodmen. Furthermore, the court will not impose a general waiver based on U.S. Bank's privilege log's lack of factual basis for assertion of privilege, as argued by Woodmen. The court suggests the parties meet and confer on the remaining challenged assertions of privilege and if necessary Woodmen

may renew its motion to compel production of specifically identified documents taking into consideration the current findings of the court. Upon consideration,

**IT IS ORDERED:**

1. The plaintiff's Motion to Compel (Filing No. 277) is granted, in part, and denied, in part.

2. **On or before February 22, 2012**, U.S. Bank shall produce unredacted copies of the Goodwin Procter report, the Deloitte report, and the Rule 38a-1 report.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 2nd day of February, 2012.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.