IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, a Nebraska Not for Profit Fraternal Benefit Society;<br><br>Plaintiff,<br><br>vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, U.S. BANCORP ASSET MANAGEMENT, INC., a Delaware Corporation;  U.S. BANCORP, a Delaware Corporation; and EMIL C. BUSSE, JR.,<br><br>Defendants. | 8:09CV407<br><br><br>**MEMORAUNDUM AND ORDER** |

This matter is before the court on a number of motions filed by both parties in this case.  Plaintiff Woodmen has filed motions in limine to exclude expert testimony of Donald M. Nicholson, Filing No. 475; to exclude the testimony of Stephen G. Dennis, Filing No. 481; and to exclude the testimony of defendants' experts Bentsen, Blount Brown-Hruska, Conroy, Goss and Sirri, Filing No. 484.  Defendant Emil C. Busse, Jr. has filed a motion in limine to exclude opinions of Goates, Filing No. 473.  Defendant U.S. Bancorp Asset Management, U.S. Bancorp, and U.S. Bank National Association have filed a motion in limine to exclude expert opinions of Goates, Filing No. 477, and to exclude all opinions of Borg-Brenner, Stein and Lawrence, Filing No. 491.  The parties have filed briefs and evidence in support of and in opposition to these motions.  Woodmen has sued defendants alleging:  declaratory judgment for disposition of toxic assets, conversion, tortious interference, unjust enrichment, as well as other causes of action including negligence and intentional torts, and additionally is asking for punitive

damages. Defendants argue that Woodmen has failed to establish a claim under any of these theories.

## BACKGROUND

This is a rather convoluted case. Briefly, plaintiff Woodmen seeks to recover investment losses it incurred by participating in the U.S. Bank National Association securities lending business. U.S. Bancorp is a publicly-traded bank holding company, incorporated in Delaware, with this principal place of business in Minneapolis, Minnesota. The securities lending business at U.S. Bank is administered by U.S. Bank National Association, U.S. Bancorp Asset Management, Inc., and the Mount Vernon Securities Lending Trust, which oversaw the management of the mutual funds at issue in this lawsuit.

## STANDARD OF REVIEW

Fed. R. Evid. 702 states:

> A witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the witness has reliably applied the principles and methods to the facts of the case.

A witness may qualify to render an expert opinion in one of five ways: knowledge, skill, experience, training or education. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); Fed. R. Evid. 702. This court serves as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Rule 702 permits a witness to testify in the form of an opinion when that expert possesses scientific, technical, or other specialized knowledge that will assist the trier of fact. Fed. R. Evid. 702. The central inquiry under Rule 702 is whether the proffered expert's testimony is sufficiently reliable. *First Union Nat'l Bank v. Benham,* 423 F.3d 855, 861 (8th Cir. 2005). The burden of establishing reliability rests on the proponent of the expert testimony. *Barrett v. Rhodia*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). The testimony must be based on scientific, technical, or other specialized knowledge. *United States v. Cawthorn*, 429 F.3d 793, 799 (8th Cir. 2005). "Knowledge" requires more than a subjective belief or an unsupported speculation; it requires an appropriate level of validation. *Id.* at 799-800 (quoting *Daubert*, 509 U.S. 590).

Rule 702 sets out three general standards for determining the reliability and relevance of proffered expert testimony. First, the proffered testimony must be based on sufficient facts or data. Fed. R. Evid. 702(b). Second, it must be the product of reliable principles and methods. Fed. R. Evid. 702(c). Third, the expert must have applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702(d). Rule 702 reflects a "relax[ation of] the traditional barriers to opinion testimony," and the court's inquiry is intended to be flexible. *In re Prempro Prods. Liab. Litig. (Scroggin)*, 586 F.3d 547, 565 (8th Cir. 2009); *see Daubert*, 509 U.S. 579, 588, 594. The district court must assess whether the methodology used by the proposed expert is valid and whether it was properly applied. *In re Prempro (Scroggin)*, 586 F.3d at 565. In *Daubert,* the Supreme Court listed four factors for consideration: (1) whether the theory or technique applied can be tested, (2) whether the theory or technique has been

3

subject to peer review or publication, (3) the known or potential rate of error, and (4) general acceptance. *Daubert*, 509 U.S. at 593-95; *In re Prempro (Scroggin)*, 586 F.3d at 565 n.11 (noting that those factors do not constitute a definitive checklist or test).

District courts apply a number of nonexclusive factors in performing this role, including "whether the expertise was developed for litigation or naturally flowed from the expert's research;" whether the expert ruled out other alternative explanations; and whether the expert sufficiently connected the proposed testimony with the facts of the case. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686-87 (8th Cir. 2001). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *In re Prempro (Scroggin)*, 586 F.3d at 565 (quoting *Unrein v. Timesavers, Inc.,* 394 F.3d 1008, 1011 (8th Cir. 2005)). "[N]othing in Rule 702, *Daubert*, or its progeny requires 'that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.'" *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003) (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)). Importantly, any doubts regarding the usefulness of an expert's testimony are to be resolved in favor of admissibility. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded. *Id.*

"[A]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)). However, it also is true that if the expert's opinion is so fundamentally

4

unsupported that it can offer no assistance to the jury, it must be excluded. *Id.* An expert opinion that fails to consider the relevant facts of the case is fundamentally unsupported. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (citations and footnote omitted).

Although the motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings, performing a gatekeeping function and sharpening the focus for later trial proceedings, some evidentiary submissions cannot be evaluated accurately or sufficiently by the trial judge in such a procedural environment. *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). A motion in limine is appropriate for "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissable for any purpose." *Id.* In other instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate the impact of the evidence on the jury. *Id.* To the extent that a party challenges the probative value of the evidence, an attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve. *United States v. Beasley,* 102 F.3d 1440, 1451 (8th Cir. 1996). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein*, 394 F.3d 1011.

## DISCUSSION

### A. Donald Nicholson, Filing No. 475[1]

Woodmen moves to exclude the testimony of defendants' expert witness, Donald M. Nicholson. Mr. Nicholson is a certified public accountant and will testify regarding reallocations and damages in this case. Woodmen contends that Mr. Nicholson will testify regarding alleged benefits to Woodmen due to a reallocation. Woodmen contends that Mr. Nicholson will testify as to matters contradictory to the facts and that such opinions will fail to meet the requirements of Fed. R. Evid. 702. Woodmen further contends that Mr. Nicholson's opinion is based on third-party pricing information and will likely confuse the jury.

The court has carefully reviewed the briefs and evidence submitted by the parties as well as the relevant law. After a review of the same, the court finds it will be very difficult, if not impossible, to make a decision on this evidence prior to trial. The court will have to hear it in the context of the total evidence to make a determination of admissibility. It appears from plaintiff's brief that many of the issues go to the weight of the testimony and not to admissibility.[2] "The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion on cross-examination." *Nebraska Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005).

---

[1] Mr. Nicholson's expert report and curriculum vitae are located at Filing Nos. 480-8 and 10 and at 486-9 and 10.

[2] Woodmen also contends that certain expert documents were not provided until well after the discovery deadline had passed. The court suggests that any such issues can be taken up with the magistrate judge in this case.

The court finds that the motions should be denied at this time without prejudice to its reassertion at trial.

### B. Stephen G. Dennis, Filing No. 481[3]

Woodmen moves to exclude the testimony of Stephen G. Dennis who is defendant Emil C. Busse, Jr.'s expert witness. Mr. Dennis is certified public accountant who will likewise testify as to damages in this case. Mr. Dennis has a Bachelor of Science in business with an accounting emphasis and a Juris Doctorate. Again, he will testify regarding the reallocation of funds and the issue of economic or monetary loss in this case. Woodmen alleges he will express an opinion that Woodmen's losses were caused by the economy and the "Great Recession." Woodmen contends that Mr. Dennis is not qualified to make these opinions and lacks any methodology for his conclusions. Woodmen contends that Mr. Dennis is not an economic expert and cannot offer an opinion about the economy and its effect on Woodmen's damages. Mr. Dennis, argues Woodmen, cannot just parrot hearsay from other reports. *See Williams v. Illinois*, __U.S.__, 132 S. Ct. 2221, 2241 (2012) (ruling that the trial court must "screen out experts who would act as mere conduits for hearsay by strictly enforcing the requirement that experts display some genuine, 'scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue'"). Further, Woodmen contends that Mr. Dennis's opinions will not assist the trier of fact and are unreliable under Fed. R. Evid. 702.

Mr. Busse disagrees with Woodmen's assessments. Mr. Busse contends that Mr. Dennis's testimony is relevant to the history of dealings between the parties, and will

---

[3] See curriculum vitae of Mr. Dennis at Filing No. 483-3 and 486-7.

show a decline in the value of securities by the three troubled assets and the ways in which Mr. Busse began to bring new money into the fund.  Mr. Dennis intends to testify as to this dilution effect caused by adding the new money to the fund.  Mr. Busse argues that Mr. Dennis's opinions will be based on arithmetic and will be helpful to the jury.

The court finds that Mr. Dennis is qualified to testify to those matters within his education and expertise.  He can testify as to the loss suffered by Woodmen.  However, the court is uncertain as to whether it will allow Mr. Dennis to testify as to particular economic issues not related to his expertise.  The court will listen to the evidence as it evolves and will make a determination at that time.  The court will not permit Mr. Dennis to testify outside his areas of expertise.  The court finds that the motions should be denied at this time without prejudice to its reassertion at trial.

### C. Opinions of Richard Bentsen, Edmon Blount, Sharon Brown-Hruska, Patrick Conroy, Ernest Goss, and Erik Sirri, Filing No. 484[4]

Woodmen moves the court to exclude the testimony of these experts because they failed to provide their methodologies in their Rule 26 reports, failed to show that their theories are reliable and have been tested or been the subject of peer review, or are generally accepted in the relevant community.  Additionally, Woodmen argues that at times their opinions contradict the facts.

---

[4] The qualifications and expert report of Richard Bentsen can be located at Filing No. 486-2 and 3; and for Edmon Blount at Filing No. 486-4; and for Sharon Brown-Hruska at Filing No. 486-5; and for Patrick Conroy at Filing No. 486-6; and for Ernest Goss at Fling No. 486-8; and for Erik Sirri, at Filing No. 486-11.

Of these eight experts, three are identified as experts in economics: Drs. Goss, Sirri and Brown-Hruska; one as an expert in portfolio management: Dr. Conroy; and two as experts in securities lending: Bentsen and Blount.

**1. Richard Bentsen –** Mr. Bentsen worked in securities lending for 25 years and does strategic securities lending consulting. Mr. Bentsen will explain the inner workings of "securities lending." Woodmen argues there is no showing of experience in analysis or purchase of secured liquidity notes or mortgage-backed securities. The court has carefully reviewed the qualifications of Mr. Bentsen. The court finds he is qualified to express his opinions based on his experience and education. The court further finds his general knowledge is reliable and will assist the trier of fact. Accordingly, the motion in limine is denied as to Mr. Bentsen.

**2. Edmon Blount –** Mr. Blount collected securities processing and other data from securities lending programs. He then sold the information to securities lending providers. He also founded a nonprofit think-tank to look at policy-related issues. Mr. Blount is asked to testify on issues involving heightened risk of capital loss and whether certain collateral investment processes were consistent with industry norms. Woodmen argues his testimony is not reliable and that there is no showing of experience in analysis or purchase of secured liquidity notes or mortgage-backed securities. The defendants contend that Mr. Blount does in fact have extensive securities lending experience.

The court has carefully reviewed Mr. Blount's credentials and finds that Mr. Blount is qualified as an expert to testify in this case. If during trial Mr. Blount exceeds his level of expertise, Woodmen can make the appropriate motion at trial. Defendants

likewise contend that Woodmen is wrong in making them provide methodology for their opinions. Woodmen makes this argument with regard to Mr. Blount as well as the remaining experts. The court has reviewed Mr. Blount's credentials and experience and finds he qualifies as an expert in this case. The court agrees with the defendants that this is not a case where science and technical data must be explained and determined to be reliable. On the contrary, the reliability of the experts in this case will depend in large measure on their experience and education as to the particular issues in the lawsuit. In most instances, if not all, the court will not need a scientific foundation for the opinion. Accordingly, the motion in limine is denied as to Mr. Blount.

**3. Sharon Brown-Hruska** – Dr. Brown-Hruska is an economist. Woodmen argues there is no showing that she has any experience in securities lending, or in analysis or purchase of secured liquidity notes or mortgage-backed securities. Defendants state that Dr. Brown-Hruska is not going to give an opinion on securities lending but will stay within her area of expertise. The court has reviewed Dr. Brown-Hruska's credentials and finds she is qualified to be an expert economist in this case. Accordingly, the motion in limine is denied as to Dr. Brown-Hruska.

**4. Patrick Conroy** – Dr. Conroy is asked to provide testimony on certain common concepts involving investments and managing of investment portfolios. In particular, he will testify as to the concept of diversification, and specifically the diversification in this case. Dr. Conroy has a background in securities and financial economics and has worked for the Securities and Exchange Commission in the Office of Economic Analysis as an economist. It does not appear that he has experience in securities lending. Again, Woodmen argues that Dr. Conroy gives no basis for his

methodology but opines that the fund in question was diversified.  He also opines as to the percentage of losses in the fund, but again does not identify his methodology for his calculations.  The defendants argue, and the court agrees, that this does not appear to be an issue where the methodology for the opinions will be needed.  The court has reviewed Dr. Conroy's credentials and experience and finds he qualifies as an expert in this case.  Accordingly, the motion in limine is denied as to Dr. Conroy.

**5. Richard Dennis** – Mr. Dennis is an attorney and a certified public accountant.  Woodmen contends that Mr. Dennis is going to give an opinion on the securities lending program based on hearsay and has performed no independent analysis.  Mr. Dennis, argues Woodmen, has no training or experience in the field of economics.  Mr. Dennis opines that Woodmen's damages were caused by national and global economic variables.  The court has already addressed Mr. Dennis's qualifications and finds he can testify at trial as previously discussed herein.  Accordingly, the motion in limine is denied as to Mr. Dennis.

**6. Ernest Goss** – Dr. Goss is an economist.  Woodmen contends that Dr. Goss is relying on a summary of information from others and there is no methodology for his determinations.  Again, the court finds the argument regarding methodology irrelevant at this time.  Second, Dr. Goss is entitled to rely on certain data and data compilations to form his opinion.  If at trial defendants believe Dr. Goss's opinions are unsupported, they can notify the court at that time.  Accordingly, the motion in limine is denied as to Dr. Goss.

**7. Donald Nicholson** – Mr. Nicholson is likewise a certified public accountant.  He has been designated as a damages expert.  Woodmen argues that Mr. Nicholson

uses a methodology that is inconsistent with the undisputed facts in the case by using the extended net asset value and an average extended net asset value to calculate the damages. Woodmen argues this makes his opinion unreliable. Woodmen contends that some of the opinion rests on information disclosed well after the discovery deadline had closed. Again, if this is the case, the issue can be raised with the magistrate judge. The court has reviewed Mr. Nicholson's credentials and expert report and finds he is qualified to testify. Woodmen is free to cross-examine Mr. Nicholson and to make appropriate objections if necessary. Accordingly, the motion in limine is denied.

**8. Eric Sirri** – Dr. Sirri is an economist and was the Chief Economist of the Securities and Exchange Commission for several years. He has been asked to discuss the general structure and operation of mutual funds and the funds at issue in this lawsuit, in particular. Woodmen argues there is no indication that Dr. Sirri has any experience in securities lending and he does not set forth his methodology for any of his opinions. Defendants state that Dr. Sirri is qualified because he is an industry expert on mutual funds and securitization. The court has reviewed Dr. Sirri's qualifications and finds he is qualified to be an expert in this case and to testify on these opinions. Accordingly, the motion in limine is denied as to Dr. Sirri.

### D. Kent Goates[5], Filing Nos. 473 and 477

Mr. Goates is a certified public accountant who will testify about damages and reallocations of funds. Defendants Busse and U.S. Bank contend that the method used by Mr. Goates is based on incomplete facts and data. U.S. Bank also argues that Mr. Goates will attempt to give opinions on lay matters, such as internal cover-ups by the

---

[5] Mr. Goates' expert report is located at Filing Nos. 474-1, Attach. A-C; 479-1; 487-1, Ex. A.

bank.  U.S. Bank also argues that Mr. Goates intends to testify as to the "cause" of the increase favoring other shareholders over Woodmen.  Woodmen contends that the defendants misconstrue the opinion of Mr. Goates.  The basis for the damages calculation at issue appears to be a determination made by an independent firm, Deloitte, concerning the sudden ownership changes caused by the alleged improper reallocations.  Woodmen contends that Mr. Goates has adopted the Deloitte methodology and applied the same.  Woodmen also contends that the defendants mischaracterize the opinions held by Mr. Goates.  The court has carefully reviewed the report of Mr. Goates as well as his credentials and finds he is qualified to be an expert in this case and to testify on these opinions.  Accordingly, the motion in limine is denied as to Mr. Goates.

### E.  <u>Bella Borg-Brenner, Avram Stein,  Edward C. Lawrence[6], Filing No. 491</u>

U.S. Bank moves to exclude the opinions of all three of these experts because their reports contain lengthy portions of "impermissible narrative" and document summaries, address credibility and motivation of witnesses, give opinions on numerous matters that are for lay persons to decide, and draw legal conclusions.

The court has reviewed the qualifications of these experts and finds they can testify at trial.  Borg-Brenner has a Master's of Business Administration and is a Ph.D. mathematics candidate.  Borg-Brenner is  portfolio and risk manager.  She was the fund manager at Stillwater Capital, a research analyst at Bear Stearns, and a vice president of fixed income research at Credit Suisse.  Avram Stein received his MBA from Harvard Graduate School of Business and has been involved in the securities lending markets

---

[6] The expert report and qualifications of Bella Borg-Brenner and Avram Stein are located at Filing No. 493-1; the qualifications and expert report of Edward Lawrence are located at Filing No. 493-2.

since 1989. He headed the Chase Global Securities Lending area. Dr. Lawrence received his Ph.D. in business administration from Penn State and his M.B.A. in finance from Penn State. He is a professor of finance at the University of Missouri and founded an economic consulting firm that conducts economic impact studies.

The issues raised by U.S. Bank are better decided at trial, not on a *Daubert* motion. If an admissibility or evidentiary issue arises, the parties can discuss it with the court. The parties have the right of cross-examination, and many of these issues will be more amenable to such. Accordingly, the motion in limine is denied as to all three of these experts.

The court wants to note for the record as follows. In general, the court will not permit legal conclusions as part of expert testimony. The court will not permit the experts to offer opinions on the issues better left to the jurors. The court will not permit expert speculation. In general, the issues presented to this court by the parties in this multitude of motions in limine are really not appropriate for resolution at this stage of the proceedings. The disagreements are for trial, and the credibility issues for the jury to determine. Testimony that invades the province of the court or jury will not be allowed, but testimony that merely assists the trier of fact will be permitted. The court is not interested in allowing duplication of opinions. All testimony will, of course, be subject to a showing of proper foundation and reliability. Further, if there is a genuine concern about the admissibility of certain evidence, the parties should approach the court as the issues arise in trial.

The court also is concerned about the number of expert witnesses scheduled to testify in this matter. It appears that there will be considerable duplication and overlap of

14

expert testimony. The court is not interested in requiring the jury to suffer through cumulative testimony. Accordingly, the court will contact the parties to arrange a trial management conference shortly after the magistrate judge completes the pretrial order and conference. THEREFORE, IT IS ORDERED that all motions in limine, Filing No. 473, Filing No. 475, Filing No. 477, Filing No. 481, Filing No. 484, and Filing No. 491 are denied, as are the requests in each of these motions for Rule 104 hearings.

Dated this 21st day of December, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge